NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TOSHAIE MCNAIR, | : | |
| | : | Civil Action No. 10-1175 (DMC) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| BOARD OF CHOSEN FREEHOLDERS, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

APPEARANCES:

Plaintiff pro se
Toshaie McNair
Bayside State Prison
P.O. Box F-1
Leesburg, NJ  08327

CAVANAUGH, District Judge

Plaintiff Toshaie McNair, a prisoner confined at Bayside State Prison in Leesburg, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that between June 9, 2007, and June 15, 2008, he was confined as a pre-trial detainee at Passaic County Jail in Paterson, New Jersey.  Plaintiff alleges that during this time he was subjected to certain conditions of confinement that he alleges were unconstitutional.  Specifically, he alleges that he was confined in "overcrowded" conditions, as evidenced by the fact that he was required to sleep on the floor on a thin mattress, that mice and cockroaches crawled on him as he slept, and that he was required to eat in a dining area located 6 to 7 feet from unventilated toilets.

Plaintiff alleges that these conditions were unsanitary and caused him to become sleep deprived and that, on June 6, 2008, he suffered chest pains that ultimately required hospitalization where he received an injection of "Toradol," a non-steroidal anti-inflammatory drug, and was returned a few hours later to the jail.  He was not told his diagnosis.  Plaintiff alleges that he continues to wake from sleep feeling that insects are crawling on him.

2

Plaintiff names as defendants Warden Meyers, Deputy Warden Bendel, the Sheriff of Passaic County, and the individual members of the Board of Chosen Freeholders of Passaic County.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.   See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.   Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).   The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."   Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."   Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).   The standard for evaluating whether a

3

complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken

4

as true) to suggest that an agreement was made.  Asking
for plausible grounds to infer an agreement does not
impose a probability requirement at the pleading stage;
it simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence of
illegal agreement.  And, of course, a well-pleaded
complaint may proceed even if it strikes a savvy judge
that actual proof of those facts is improbable, and
"that a recovery is very remote and unlikely." ...  It
makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice.  Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory. ...

<u>Twombly</u>, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the <u>Twombly</u>

pleading standard applies outside the § 1 antitrust context in

which it was decided.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

<u>Twombly</u> so narrowly as to limit its holding on plausibility to

the antitrust context").

Context matters in notice pleading.  Fair notice under
Rule 8(a)(2) depends on the type of case -- some
complaints will require at least some factual
allegations to make out a "showing that the pleader is
entitled to relief, in order to give the defendant fair
notice of what the ... claim is and the grounds upon
which it rests."  Indeed, taking <u>Twombly</u> and the
Court's contemporaneous opinion in <u>Erickson v. Pardus</u>,
127 S.Ct. 2197 (2007), together, we understand the
Court to instruct that a situation may arise where, at
some point, the factual detail in a complaint is so
undeveloped that it does not provide a defendant the
type of notice of claim which is contemplated by
Rule 8.  Put another way, in light of <u>Twombly</u>, Rule
8(a)(2) requires a "showing" rather than a blanket
assertion of an entitlement to relief.  We caution that
without some factual allegation in the complaint, a
claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when

assessing the sufficiency of <u>any</u> civil complaint, a court must

distinguish factual contentions -- which allege behavior on the

part of the defendant that, if true, would satisfy one or more

elements of the claim asserted -- and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory

statements."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation."  <u>Id.</u> at 1950.  Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  <u>Id.</u>

Therefore, after Iqbal, when presented with a
motion to dismiss for failure to state a claim,
district courts should conduct a two-part analysis.
First, the factual and legal elements of a claim should
be separated.  The District Court must accept all of
the complaint's well-pleaded facts as true, but may
disregard any legal conclusions.  Second, a District
Court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff
has a "plausible claim for relief."  In other words, a
complaint must do more than allege the plaintiff's
entitlement to relief.  A complaint has to "show" such
an entitlement with its facts.  See Phillips, 515 F.3d
at 234-35.  As the Supreme Court instructed in Iqbal,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure provides:

A party must state its claims ... in numbered
paragraphs, each limited as far as practicable to a
single set of circumstances.  ...  If doing so would
promote clarity, each claim founded on a separate
transaction or occurrence ... must be stated in a
separate count or defense.

Rule 18(a) controls the joinder of claims.  In general, "[a]

party asserting a claim ... may join as independent or

alternative claims, as many claims as it has against an opposing

party."

Rule 20(a)(2) controls the permissive joinder of defendants

in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>> (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added). See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all. If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir.

2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007); <u>Coughlin v.
Rogers</u>, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground
for dismissing an action.  Instead, a court faced with a
complaint improperly joining parties "may at any time, on just
terms, add or drop a party.  The court may also sever any claims
against a party."

Where a complaint can be remedied by an amendment, a
district court may not dismiss the complaint with prejudice, but
must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34
(1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d
Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane
v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal
pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg
County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

III.   <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV.   ANALYSIS

A.   Claims Against Board of Chosen Freeholders

Although Plaintiff purports to name the Board, itself, as a defendant in the caption, in the text of the Complaint he specifies that he is suing the members of the Board as individuals. Plaintiff has failed to state a claim against either the municipal entity or the individuals.

10

Local government units and supervisors are not liable under
§ 1983 solely on a theory of respondeat superior.  See City of
Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v.
New York City Department of Social Services, 436 U.S. 658, 690-
91, 694 (1978) (municipal liability attaches only "when execution
of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent
official policy, inflicts the injury" complained of); Natale v.
Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d
Cir. 2003).  "A defendant in a civil rights action must have
personal involvement in the alleged wrongs, liability cannot be
predicated solely on the operation of respondeat superior.
Personal involvement can be shown through allegations of personal
direction or of actual knowledge and acquiescence."  Rode v.
Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations
omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286,
1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-
91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff
must show that an official who has the power to make policy is
responsible for either the affirmative proclamation of a policy
or acquiescence in a well-settled custom."  Bielevicz v. Dubinon,
915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v.
Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516

U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v.

Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must

demonstrate that, through its deliberate conduct, the

municipality was the moving force behind the plaintiff's injury.

Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing]
> final authority to establish municipal policy with
> respect to the action issues a final proclamation,
> policy or edict."  Kneipp v. Tedder, 95 F.3d 1199, 1212
> (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati,
> 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452
> (1986) (plurality opinion)).  A custom is an act "that
> has not been formally approved by an appropriate
> decisionmaker," but that is "so widespread as to have
> the force of law."  [Bd. of County Comm'rs of Bryan
> County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
> There are three situations where acts of a
> government employee may be deemed to be the result of a
> policy or custom of the governmental entity for whom
> the employee works, thereby rendering the entity liable
> under § 1983.  The first is where "the appropriate
> officer or entity promulgates a generally applicable
> statement of policy and the subsequent act complained
> of is simply an implementation of that policy."  The
> second occurs where "no rule has been announced as
> policy but federal law has been violated by an act of
> the policymaker itself."  Finally, a policy or custom
> may also exist where "the policymaker has failed to act
> affirmatively at all, [though] the need to take some
> action to control the agents of the government 'is so
> obvious, and the inadequacy of existing practice so
> likely to result in the violation of constitutional
> rights, that the policymaker can reasonably be said to
> have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Plaintiff has failed to allege facts suggesting that the

Board of Chosen Freeholders have any duty to provide for the care

and custody of inmates at Passaic County Jail.  Pursuant to N.J.

Stat. Ann. § 30:8-17, "Except as otherwise in this chapter
provided the sheriff of every county shall have the care, custody
and control of the county jail or jails and all prisoners
therein, and shall be responsible for the conduct of any keeper
appointed by him."  While it is possible for the Board of Chosen
Freeholders to pass a resolution to take over custody of the
jails pursuant to N.J. Stat. Ann. § 3:8-19, Plaintiff has failed
to allege that the Passaic County Board has passed such a
resolution.  In the absence of such a resolution, there is no
basis for asserting a claim against the Board.  See Friedland v.
Hayman, Civil No. 06-2583, 2008 WL 3887614 (D.N.J. Aug. 19,
2008).

Moreover, with respect to the individual Freeholders,
Plaintiff's assertions of liability appear to be based solely
upon an untenable theory that the Freeholders are vicariously
liable for any wrongdoings by the Sheriff, Warden, or Deputy
Warden.  For example, Plaintiff characterizes the Freeholders as
"Legislators over the Passaic County Jail."  In addition,
Plaintiff alleges that the Freeholders "are responsible for the
internal and external workings of the Passaic County Jail,"
including specifically design of the jail and approval of medical
staff.  Neither of these responsibilities, should Plaintiff be
able to establish them, have any bearing on the alleged
constitutional violations.  Plaintiff has failed to allege any

13

facts that would permit this Court to find that the Freeholders, as individuals, were in any way involved in any constitutional violations.  Accordingly, the claims against the Board of Chosen Freeholders, and against the Freeholders as individuals, will be dismissed with prejudice.

B.   Claims against the Sheriff, Warden, and Deputy Warden

As noted above, Plaintiff has alleged that Passaic County Jail is overcrowded (as evidenced by the requirement that he sleep on a thin mattress on the floor for more than one year), vermin-infested, and unsanitary (as evidenced by the requirement that he eat within six or seven feet of unventilated toilets). Plaintiff alleges that he was subjected to these conditions from June 9, 2007 until June 15, 2008, as a pre-trial detainee.  This Court construes this as a claim that he was deprived of liberty without due process, in violation of the Fourteenth Amendment to the United States Constitution.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  See Hubbard v. Taylor, 399

F.3d 150 (3d Cir. 2005); <u>Fuentes v. Wagner</u>, 206 F.3d 335, 341

(3d Cir. 2000). Analysis of whether such a detainee or

unsentenced prisoner has been deprived of liberty without due

process is governed by the standards set out by the Supreme Court

in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979). <u>Hubbard</u>, 399 F.3d at

157-60, 164-67; <u>Fuentes</u>, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions
> or restrictions of pretrial detention that implicate
> only the protection against deprivation of liberty
> without due process of law, we think that the proper
> inquiry is whether those conditions amount to
> punishment of the detainee. For under the Due Process
> Clause, a detainee may not be punished prior to an
> adjudication of guilt in accordance with due process of
> law. ...

> Not every disability imposed during pretrial
> detention amounts to "punishment" in the constitutional
> sense, however. Once the government has exercised its
> conceded authority to detain a person pending trial, it
> obviously is entitled to employ devices that are
> calculated to effectuate this detention. ...

> A court must decide whether the disability is
> imposed for the purpose of punishment or whether it is
> but an incident of some other legitimate governmental
> purpose. Absent a showing of an expressed intent to
> punish on the part of detention facility officials,
> that determination generally will turn on "whether an
> alternative purpose to which [the restriction] may
> rationally be connected is assignable for it, and
> whether it appears excessive in relation to the
> alternative purpose assigned [to it]." Thus, if a
> particular condition or restriction of pretrial
> detention is reasonably related to a legitimate
> governmental objective, it does not, without more,
> amount to "punishment." Conversely, if a restriction
> or condition is not reasonably related to a legitimate
> goal--if it is arbitrary or purposeless--a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not

> constitutionally be inflicted upon detainees <u>qua</u>
> detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility.  "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial."  441 U.S. at 540.  Retribution and deterrence, however,

are not legitimate nonpunitive governmental objectives.  441 U.S.

at 539 n.20.  Nor are grossly exaggerated responses to genuine

security considerations.  <u>Id.</u> at 539 n.20, 561-62.

Here, Plaintiff's allegations that he was compelled, for

more than a year, to sleep on the floor in a vermin-infested

environment, and that he was required for the same period to eat

in close proximity to unventilated toilets, are sufficient to

state a claim against the Sheriff, the Warden, and the Deputy

Warden.

However, the fact that the violations are alleged to have

occurred from June 9, 2007, through June 15, 2008, while the

Complaint is dated March 3, 2010, compels this Court to consider

whether claims arising from events occurring prior to March 3,

2008, are time-barred.

16

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint. See, e.g., Jones v. Bock, 549 U.S. 199, 214-15 (2007) (if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"). See also Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hunterson v. DiSabato, 2007 WL 1771315 (3d Cir. 2007) ("district court may sua sponte dismiss a claim as time barred under 28 U.S.C. § 1915A(b)(1) where it is apparent from the complaint that the applicable limitations period has run") (citing Jones v. Bock, Pino v. Ryan) (not precedential); Hall v. Geary County Bd. of County Comm'rs, 2001 WL 694082 (10th Cir. June 12, 2001) (unpub.) (applying Pino to current

17

§ 1915(e)); <u>Rounds v. Baker</u>, 141 F.3d 1170 (8th Cir.

1998)(unpub.); <u>Johnstone v. United States</u>, 980 F.Supp. 148 (E.D.

Pa. 1997) (applying <u>Pino</u> to current § 1915(e)).  The requirements

of 28 U.S.C. § 1915A (governing civil actions in which a prisoner

seeks redress from a governmental entity or officer or employee

of a governmental entity) and 42 U.S.C. § 1997e (governing

actions brought with respect to prison conditions) that federal

courts review and dismiss any complaint that fails to state a

claim parallels the provision in 28 U.S.C. § 1915(e).

"[T]he accrual date of a § 1983 cause of action is a

question of federal law that is <u>not</u> resolved by reference to

state law."  <u>Wallace v. Kato</u>, 127 S.Ct. 1091, 1095 (2007)

(emphasis in original).

A claim accrues as soon as the injured party "knew or had

reason to know of the injury that constitutes the basis of his

action."  <u>Sandutch v. Muroski</u>, 684 F.2d 252, 254 (3d Cir. 1982).

<u>See also</u> <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d

1380, 1385 (3d Cir. 1994).  "Plaintiff's actual knowledge is

irrelevant.  Rather, the question is whether the knowledge was

known, or through reasonable diligence, knowable.  Moreover, the

claim accrues upon knowledge of the actual injury, not that the

injury constitutes a legal wrong."  <u>Fassnacht v. United States</u>,

1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing <u>Oshiver</u>, 38 F.3d at

1386).

18

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 280 (1985). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims. See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).

Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application. Wilson v. Garcia, 471 U.S. at 269.

New Jersey statutes set forth certain bases for "statutory tolling." See, e.g., N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable). New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has

"in some extraordinary way" been prevented from asserting his

rights, or where a plaintiff has timely asserted his rights

mistakenly by either defective pleading or in the wrong forum.

See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted),

certif. denied, 172 N.J. 178 (2002). "However, absent a showing

of intentional inducement or trickery by a defendant, the

doctrine of equitable tolling should be applied sparingly and

only in the rare situation where it is demanded by sound legal

principles as well as the interests of justice." Id.

When state tolling rules contradict federal law or policy,

in certain limited circumstances, federal courts can turn to

federal tolling doctrine. See Lake v. Arnold, 232 F.3d 360, 370

(3d Cir. 2000). Under federal law, equitable tolling is

appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff
> with respect to her cause of action; (2) where the
> plaintiff has been prevented from asserting her claim
> as a result of other extraordinary circumstances; or
> (3) where the plaintiff asserts her claims in a timely
> manner but has done so in the wrong forum.

Id. n.9.

Here, Plaintiff's claims based upon events occurring prior

to March 3, 2008, must be dismissed as time-barred. Although he

alleges that he was threatened with physical violence when he

asked to be moved to another part of the jail, he does not allege

that any of these named defendants threatened him, nor does he

allege any reason why he could not have timely asserted claims

20

for events occurring prior to March 3, 2008, when he was transferred from Passaic County Jail in 2009.  Accordingly, all claims related to events occurring prior to March 3, 2008, will be dismissed with prejudice as time-barred.

V.   CONCLUSION

For the reasons set forth above, all claims for events occurring prior to March 3, 2008, will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  In addition, all claims against the Board of Chosen Freeholders, and against the individual Freeholders, will be dismissed with prejudice for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to state a claim against the Board of Chosen Freeholders, or the individual Freeholdeers, the Court will grant Plaintiff leave to file an amended complaint.[1]  An appropriate order follows.

Dennis M. Cavanaugh
United States District Judge

Dated: 12/3/10

---

[1] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.